# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

**HAROLD ALLISON,**

    **Plaintiff**

**v.**                                                           **CIVIL ACTION NO.**
                                                                 **CV-09-0944-IPJ**

**HART & COOLEY, INC.,**

    **Defendant.**

## MEMORANDUM OPINION

Pending before the court is defendant Hart & Cooley, Inc.'s ("Hart & Cooley") motion for summary judgment (doc. 17), brief in support (doc. 19), and evidentiary materials (doc. 18); plaintiff Harold Allison's response (doc. 23); and defendant's reply (doc. 28).

## Factual Background

Hart & Cooley employs approximately 180 people in its manufacturing facility and 40 people in its distribution facility, both of which are located in Huntsville, Alabama. Postma Decl., ¶ 1. Plaintiff became a permanent employee of defendant's in the Fall of 2004 and joined the sheet metal workers' union, Local 555. Allison Dep., at 98-100. The plaintiff received a copy of the Collective Bargaining Agreement ("CBA") between the union and Hart & Cooley and an Employee Handbook, both of which governed aspects of the terms and conditions

of his employment.  Allison Dep., at 106-109.

The Employee Handbook prohibits the use, possession, or being under the influence of drugs or alcohol while at work.  Ex. 4 to Allison Dep., at 14 (doc. 18-5).  The CBA permits Hart & Cooley to perform "a urine and/or blood test, or any other medically accepted test used to determine the presence of alcohol and/or illicit substances" when an employee has been "(1) involved in a work-related accident, or; (2) has been injured at work, or; (3) is observed in a condition, or demonstration [sic]conduct which suggests that the employee is working under the influence of alcohol and/or illicit substances."  Ex. 2 to Allison Dep., at 36 (doc. 18-5).  Every new employee since Eric Postma became the head of Human Resources in 2005 has been required to undergo a pre-employment drug test.  Postma Dep., at 70; Postma Decl., ¶ 4.

On June 21, 2007, plaintiff fell while at work and told his supervisor, but he declined medical attention saying he was fine.  Allison Dep., at 113-114.  His supervisor, Steve Clack, told Postma about the fall and plaintiff's refusal of medical attention.  Postma Dep., at 30.  When plaintiff returned home that evening, he testified that at least one of his twenty-two pit pulls jumped on him, knocking him over and injuring his left shoulder.  He testified that the fall at home compounded the pain from the fall at work, and after a sleepless night caused by the pain, he went to Crestwood Hospital on the morning of June 22, 2007.  Allison

Dep., at 115-117. At the hospital, plaintiff was told he needed to fill out workmen's compensation forms and take a drug test. He refused, claiming the fall was not work related. Shortly thereafter, plaintiff soiled his pants and returned home to change his clothes. Upon returning to the hospital, plaintiff agreed to take the drug test and signed a form authorizing the hospital to perform a post-accident drug test. When he was taken to a room and told to remove everything from his pockets and to remove his shoes and hat, he again refused the drug test saying the injury was not work related. Allison Dep., at 118-125; Ex. 18 to Allison Dep. (doc. 18-7).

Postma received a phone call from Crestwood Hospital informing him that plaintiff had sought and received medical attention for a work-related injury. However, when asked to submit to a drug test, plaintiff refused and left the hospital. Postma Dep., at 33-34. The hospital then faxed Postma the drug test authorization form that indicated the drug test was "post-accident" and was signed by plaintiff. Postma Dep., at 35-36; Ex. 18 to Allison Dep. (doc. 18-7). Postma then contacted plaintiff, whereupon plaintiff explained that he felt he did not need to submit to the drug test because he did not feel the injury was work-related. Postma told plaintiff to get treated at Occupational Health Group ("OHG") and to report to his office on June 25. Plaintiff went to OHG and submitted to a urine drug test, which was negative for any illegal drugs. On June 25, 2007, plaintiff

was terminated for refusing to take the drug test at Crestwood Hospital pursuant to Article 29, Section 4 of the CBA, which deems refusal to participate in a testing procedure a terminable offense.  Ex. 2 to Allison Dep., at 36 (doc. 18-5); Postma Dep., at 44.

Plaintiff filed a grievance with his union on July 25, 2007, and filed an untimely EEOC charge for race discrimination on January 28, 2008.[1]  Postma Decl., ¶ 15; Ex. 5 to Postma Decl. (doc. 18-11); Ex. 9 to Allison Dep. (doc. 18-6); Ex. 15 to Allison Dep. (doc. 18-7). Postma testified the grievance had no merit but decided to resolve the grievance by reinstating plaintiff on a Last Chance Agreement, and Plant Manager Larry McAfee agreed.  Postma Decl., ¶ 15. Plaintiff was rehired on April 15, 2008.  Ex. 6 to Postma Decl. (doc. 18-11).  The Last Chance Agreement required plaintiff to cease leaving threatening voice messages with Hart & Cooley management personnel and to "follow both the spirit and the letter of all the rules and regulations found in the Company handbook and Union/Company contract."  Ex. 6 to Postma Decl. (doc. 18-11). The plaintiff is the only employee Postma has reinstated since becoming Human Resources Manager in January 2005.  Postma Decl., ¶ 15.

Because of plaintiff's ten month gap in employment at Hart & Cooley,

---

[1] The court notes that plaintiff signed the EEOC charge on January 26, 2008, a Saturday; it was stamped received on the next business day, January 28, 2008.

Postma had plaintiff submit to a hair follicle drug test[2] as a new employee. Postma Decl., ¶ 17; Postma Dep., at 70. All new employees go through a pre-employment drug test. Postma Dep., at 70. Further, because of plaintiff's refusal to take a drug test at Crestwood Hospital, his claim that his injury was not work related despite having reported the fall, and his threatening messages left for Hart & Cooley personnel, Postma suspected plaintiff may have been under the influence of illegal substances. Postma Decl., ¶ 17; Postma Dep. 74, 79-80.

Plaintiff tested positive for cocaine and Benzoylecgonine. Allison Dep., at 180-181; Ex. 12 to Allison Dep. (doc. 18-6). Plaintiff testified that he took cocaine monthly during his employment with Hart & Cooley, Allison Dep., at 21-22, and used cocaine a few days before his April 15, 2008, drug test. On April 22, 2008, Hart & Cooley terminated plaintiff for his failure to abide by the Last Chance Agreement and the company's drug policy as outlined in the Employee Handbook. Allison Dep., at 186-188; Postma Decl., ¶ 19. Plaintiff testified that he thought the results of his drug test may have been different had his urine, rather than his hair, been tested because the television program "CSI" informed him that drugs stay in one's system for only 72 hours. He also bases this opinion on what a

---

[2]Postma decided to have the plaintiff tested with a hair follicle drug test because he thought it would be more accurate than a urine drug test. Postma Decl., ¶ 17.

physician[3] told him, that "any type of drugs for black people with dark hair can stay in your system anywhere from 30 days to two to three years, hair sample." Allison Dep., at 183-185.

When asked if he knew "for a fact whether any employees of any other race have been given a hair drug test at Hart & Cooley," plaintiff responded, "Not actually. But there have been people that have talked that have been there 15 or 20 years, that they had never heard of it unless they want to get rid of you." Allison Dep., at 193. Plaintiff also recalls two female African-American employees who were subjected to hair follicle drug testing, but he does not know the circumstances giving rise to their drug tests. Allison Dep., at 179. Postma, who identified the employees as "BR" and "JT," testified that hair follicle testing was used because of a several day time lapse that occurred between the work accident that gave rise to the need for a drug test and the time of the drug testing itself. Postma Decl., ¶ 25; Postma Dep., at 86-90. The time lapse was a result of BR's injuries, which required emergency surgery at the hospital immediately after the accident, delaying the drug test at OHG. Postma Decl., ¶ 25.

As for employees or applicants who have tested positive for illegal drugs but have retained their employment, plaintiff stated that he was told "J.R." was

---

[3]Plaintiff testified, "I think [the physician's name is] Dr. Roeth or something like that." Allison Dep., at 185.

one such employee. Plaintiff's deposition proceeded:

> Q: Who told you that?
> A: A lady that works at the warehouse, that used to work there.
> Q: Someone who worked at the warehouse told you that J.R. tested positive for drugs?
> A: Yes.
> Q: Do you know whether J.R. was retained?
> A: He's still employed.
> Q: Have you ever seen a drug test result on J.R.?
> A: No.
> Q: Were you present for the drug test on J.R.?
> A: No.

Allison Dep., at 195. Postma, however, stated that he has

> terminated both white and black employees who failed drug tests, and rescinded employment offers for both white and black candidates who failed pre-employment drug screens. In addition to a white employee whose intials are BS, who [he] testified about in [his] deposition, [he has] terminated at least three other white employees for failing drug tests. Their initials are CT, JP, and TL.

Postma Decl., ¶ 23. Copies of CT, JP, and TL's drug tests were submitted to the court. Ex. 9 to Postma Decl. (doc. 18-12).

Plaintiff filed suit against Hart & Cooley for race discrimination pursuant to 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981, as amended. Plaintiff charges defendant discriminated against him in its decision to fire plaintiff after he refused to take the drug test at Crestwood Hospital and again after testing positive for cocaine upon his reemployment. He also charges that the decision to have him

tested through hair follicle testing was motivated by racial discrimination. Finally, he asserts Hart & Cooley retaliated against him for filing the January 28, 2008, EEOC complaint by terminating him a second time.

## Summary Judgment Standard

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* FED. R. CIV. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). The facts, and any reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990). The non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or merely be colorable. *See* FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

## Analysis

Two initial matters narrow the issues in this case considerably. First, plaintiff alleges violations of his civil rights under Title VII and privacy rights under the Health Insurance Portability and Accountability Act due to the actions of Crestwood Hospital and its staff. Although plaintiff's complaint states that defendant is somehow responsible for these actions, plaintiff has produced no legal theories that support attributing the hospital's actions to the defendant and none are apparent to the court. Because there is no genuine issue of material fact concerning the claims that Hart & Cooley violated plaintiff's rights due to the actions of a third party, the hospital, the defendant's summary judgment with respect to these claims is **GRANTED**.

Second, plaintiff's claim of discrimination with respect to his termination on June 25, 2007, for refusing to submit to a drug test is barred for his failure to bring his claim within 180 days of the alleged discrimination. *See* 42 U.S.C. § 2000e-5(e)(1); *Maynard v. Pneumatic Products Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) ("Timely filing a charge of discrimination is a prerequisite to bringing suit under . . . Title VII.") (citations omitted). Plaintiff waited until January 28, 2008, to file his EEOC complaint, while the alleged discrimination took place on June 25, 2007. Accordingly, the court addresses only the claims discussed in plaintiff's EEOC charge from August 4, 2008.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973),

the Supreme Court announced the burden-shifting analysis that applies to a Title VII[4] claim based on circumstantial evidence. The analysis requires that the plaintiff first must establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) similarly situated employees not in the plaintiff's classification were treated more favorably; and (4) he was qualified to do the job. *Knight v. Baptist Hospital of Miami*, 330 F.3d 1313, 1316 (11th Cir. 2003).

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment decision. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097 (2000). If the defendant articulates one or more legitimate, non-discriminatory reasons, the presumption of discrimination created by the plaintiff's prima facie case disappears. *Id.* at 142-43. The plaintiff then "has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but instead were a pretext for discrimination. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.

---

[4]Claims brought under 42 U.S.C. § 1981 are analyzed in the same manner as claims brought under 42 U.S.C. § 2000e *et seq.*

2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).

Assuming *arguendo* that plaintiff can prove a prima facie case of race discrimination, Hart & Cooley has produced legitimate, non-discriminatory reasons for his discharge. At this stage, the defendant need only produce the evidence sufficient for the trier of fact to conclude that petitioner suffered an adverse employment action for a legitimate, non-discriminatory reason. *Reeves*, 530 U.S. at 142.

In this case, Hart & Cooley has produced evidence that plaintiff failed to abide by the drug-free policy, as plaintiff tested positive for cocaine upon his re-employment drug test. The Employee Handbook and CBA discussed the policy banning drug possession and use and forbidding being under the influence of drugs at work. Additionally, the Last Chance letter signed by plaintiff stated that plaintiff agreed to abide by the rules and regulations found in the handbook. Accordingly, the defendant has met its light burden.

Plaintiff may prove pretext "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095 (1981) (citing *McConnell Douglas*, 411 U.S. at 804-05). The "sole concern" of the court is "whether unlawful discriminatory animus motivates a challenged

employment decision." *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (citing *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir 1999)).

Plaintiff argues that defendant's reason for his termination was pretextual and that Hart & Cooley used hair follicle testing only on African Americans because drugs stay in an African American's hair longer than in a Caucasian's hair or urine. However, plaintiff has failed to provide evidence that had he been subjected to urine drug testing, he would have tested negative for cocaine. Thus, plaintiff has failed to show that his positive test for an illegal substance, the use of which was outlined as a terminable offense in the Employee Handbook, was a pretext for race discrimination. Additionally, plaintiff admitted that he used cocaine monthly during his employment with the defendant and that he used cocaine a few days before his April 15, 2008, drug test.

Retaliation

Plaintiff claims defendant retaliated against him for filing the January 28, 2008, EEOC charge by terminating his employment. To prove a case of retaliation through circumstantial evidence, the plaintiff must use the burden-shifting analysis provided in *McDonnell Douglas*. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). The plaintiff must show (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there is

some causal connection between the two events. *Olmstead v. Taco Bell Corp.* 141 F.3d 1457, 1460 (11th Cir. 1998) (citing *Meeks v. Computer Assc. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)). If the plaintiff establishes a prima facie case, the defendant may present legitimate, non-retaliatory reasons for the adverse employment action. *Pennington*, 261 F.3d at 1266 (citations omitted). "The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." *Id.* (citation omitted).

Plaintiff engaged in statutorily protected conduct by filing an EEOC charge on January 28, 2008, and suffered an adverse employment action when he was terminated on April 22, 2008. Plaintiff cannot, however, show that those two events are causally connected. "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798-99 (11th Cir. 2000)).[5] However, plaintiff's positive test for cocaine upon his re-employment constituted intervening misconduct that severed any causal connection that may have existed. *See Hankins v. AirTran Airways, Inc.*, 237

---

[5] The court does not address the fact that in order for plaintiff to show causation, he would need to show that Hart & Cooley rehired plaintiff just so they could retaliate against him for conduct for which he was already terminated.

Fed.Appx. 513, 520-521 (11th Cir. 2007) (discussing *Whatley v. Metropolitan Atlanta Rapid Transit Authority*, 632 F.2d 1325 (5th Cir. 1980) and *Fleming v. Boeing Co.*, 120 F.3d 242 (11th Cir. 1997)).  Finally, for the same reasons discussed above, Hart & Cooley's decision to terminate plaintiff for failing his drug test constitutes legitimate, non-discriminatory, and non-pretextual reasons for his termination.

## IV. Conclusion

Having considered the foregoing, and finding that plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial on his claims against defendant, and that defendant Hart & Cooley is entitled to judgment as a matter of law, it is **ORDERED** that defendant's motion for summary judgment be **GRANTED**.  Plaintiff's claims shall be **DISMISSED WITH PREJUDICE** by separate order.

**DONE** and **ORDERED** this 10th of March 2010.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE